NES/SCJ:RAP/DJ
F. #2015R01575

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

SHING KUNG LI,

    Defendant.

- - - - - - - - - - - - - - - X

INFORMATION

Cr. No. 16-490 (WFK)
(T. 18, U.S.C., §§ 1349,
982(a)(7) and 3551 et seq.;
T. 21, U.S.C., § 853(p))

THE UNITED STATES ATTORNEY CHARGES:

## INTRODUCTION

At all times relevant to this Information, unless otherwise indicated:

I.  Background

  A.  The Medicare and Medicaid Programs

   1.  The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were at least 65 years of age or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

   2.  The New York State Medicaid program ("Medicaid") was a federal and state health care program providing benefits to the individuals and families who met specified financial and other eligibility requirements, and certain other individuals who



COURT'S EXHIBIT NO. IDENTIFICATION/EVIDENCE DKT.# DATE:

lacked adequate resources to pay for medical care. CMS was responsible for overseeing the Medicaid program in participating states, including New York. Individuals who received benefits under Medicaid were referred to as Medicaid "beneficiaries."

3. Medicare and Medicaid were each a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

4. Medicare was divided into multiple parts. Medicare Part B covered the costs of physicians' services and outpatient care, such as occupational therapy. Generally, Medicare Part B covered these costs only when, among other requirements, the services were medically necessary and ordered by a physician.

5. Medicaid covered the costs of medical services and products ranging from routine preventive medical care for children to institutional care for the elderly and disabled. Among the specific medical services and products provided by Medicaid was occupational therapy. Generally, Medicaid covered these costs only when, among other requirements, the services were medically necessary and ordered by a physician.

6. Medical providers were authorized to submit claims to Medicare and Medicaid only for services they actually rendered and were required to maintain patient records verifying the provision of services.

7. To receive reimbursement from Medicare for a covered service, a medical provider was required to submit a claim, either electronically or in writing, through the submission of Forms CMS-1500 or UB-92. To receive reimbursement from Medicaid for a covered service, a medical provider was required to submit a claim, either electronically or in writing, through the submission of a New York State eMedNY-150003 Claim Form.

2

Both claim forms required the provider to certify, among other things, that the services were rendered to the patient and were medically necessary.

8. Providers submitted claims to Medicare and Medicaid using billing codes, also called current procedural terminology or "CPT" codes, which specifically identified the medical services provided to beneficiaries. Many of the CPT codes for occupational therapy services are "time codes" based on the amount of time spent with a patient. These services are often billed in increments of 15 minutes. Medicare rules and regulations, however, allow a provider to bill for one 15-minute code after spending only eight minutes with a patient.

9. Under Medicare and Medicaid, occupational therapy services are only reimbursable when performed by a licensed physical or occupational therapist, or a licensed physical or occupational therapy assistant directly supervised by a licensed physical or occupational therapist who is physically located in the same office suite.

B. The Defendant and Relevant Medical Clinic

10. Evercare Occupational Therapy LLC ("Evercare") was a New York professional corporation located at 2100 Flatbush Avenue, Brooklyn, New York, 11234. Evercare operated at that location from approximately June 2011 until June 2013. Evercare purported to provide, among other things, medically necessary occupational therapy and related medical services to Medicare and Medicaid beneficiaries and submitted claims to Medicare and Medicaid for such services.

11. The defendant SHING KUNG LI was a licensed occupational therapist and the President of Evercare. During the time he was the president of Evercare, LI was enrolled to participate in the Medicare and Medicaid programs.

3

12. Owner A, along with others, who were not medical professionals allowed to own a medical clinic under New York state law, were the actual owners of Evercare. Owner A controlled the day-to-day operations of Evercare while the defendant SHING KUNG LI worked full-time at a nursing home during Evercare's operating hours.

II. <u>The Health Care Fraud Conspiracy</u>

13. In approximately August 2011, the defendant SHING KUNG LI, together with others, fraudulently enrolled Evercare in Medicare by submitting an enrollment application identifying LI as the sole owner of Evercare. In fact, Owner A, along with others, owned and operated Evercare.

14. From approximately June 2011 until June 2013, the defendant SHING KUNG LI, together with others, agreed to execute a fraudulent scheme in which they submitted and caused to be submitted claims to Medicare and Medicaid for occupational therapy services that were not medically necessary, not provided and otherwise did not qualify for reimbursement by Medicare and Medicaid.

15. The defendant SHING KUNG LI, together with others, submitted and caused to be submitted to Medicare and Medicaid false and fraudulent claims for occupational therapy that were not medically necessary and were not provided. For example:

(a) LI, together with others, billed four timed CPT codes for each patient when the patient did not receive the services identified by the codes and when the patient did not receive services for the length of time identified by the codes; and

(b) LI, together with others, agreed with Owner A to sign charts and billing documents falsely indicating that they had provided services to patients that were not

4

actually provided and that they had directly supervised the work of occupational therapy assistants that they did not, in fact, actually supervise.

16. In or about and between September 2011 and June 2013, providers at Evercare submitted and caused to be submitted approximately $1.2 million dollars in fraudulent claims to Medicare and approximately $910,000 in claims to Medicaid. In or about and between approximately September 2011 and June 2013, Medicare deposited approximately $870,000 and Medicaid deposited approximately $140,000 into Evercare's bank account to pay fraudulent claims submitted by Evercare.

## CONSPIRACY TO COMMIT HEALTH CARE FRAUD

17. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

18. In or about and between June 2011 and June 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant SHING KUNG LI, together with others, did knowingly and intentionally conspire to execute a scheme and artifice to defraud Medicare and Medicaid, health care benefit programs, and to obtain, by means of materially false and fraudulent pretenses, representations and promise, money and property owned by, and under the custody and control of, Medicare and Medicaid, in connection with the delivery of and payment for health care benefits, items and services, contrary to Title 18, United States Code, Section 1347.

(Title 18, United States Code, Section 1349 and 3551 et seq.)

## CRMINAL FORFEITURE ALLEGATION

19. The United States hereby gives notice to the defendant that, upon conviction of Count One, the government will seek forfeiture in accordance with Title 18,

United States Code, Section 982(a)(7), which requires any person convicted of such offense to forfeit any property, real or personal, that constitutes or is derived, directly or indirectly from gross proceeds traceable to the commission of such offense.

20. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 982(a)(7); Title 21, United States Code, Section 853(p))

ROBERT L. CAPERS
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

ANDREW WEISSMANN
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE